# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ATHENS DIVISION

| | |
|---|---|
| EVA SIMS, | : |
| Plaintiff, | : |
| v. | : CASE NO. 3:17-CV-22-MSH |
| | : Social Security Appeal |
| NANCY A BERRYHILL, | : |
| Commissioner of Social Security, | : |
| Defendant. | : |

## ORDER

The Social Security Commissioner, by adoption of the Administrative Law Judge's (ALJ's) determination, denied Plaintiff's application for supplemental security income, finding that she is not disabled within the meaning of the Social Security Act and Regulations. Plaintiff contends that the Commissioner's decision was in error and seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted. Both parties filed their written consents for all proceedings to be conducted by the United States Magistrate Judge, including the entry of a final judgment directly appealable to the Eleventh Circuit Court of Appeals pursuant to 28 U.S.C. § 636(c)(3).

## LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards

were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987) (per curiam). "Substantial evidence is something more than a mere scintilla, but less than a preponderance. If the Commissioner's decision is supported by substantial evidence, this court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotation marks omitted). The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court may not decide facts, re-weigh evidence, or substitute its judgment for that of the Commissioner.[1] *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980) (per curiam). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.*

The Plaintiff bears the initial burden of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). The Plaintiff's burden is a heavy one and is so stringent that it has been described as bordering on the

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981).[2] A Plaintiff seeking Social Security disability benefits must demonstrate that she suffers from an impairment that prevents her from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a Plaintiff must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. § 404.1 *et seq*.

Under the Regulations, the Commissioner uses a five-step procedure to determine if a Plaintiff is disabled. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4). First, the Commissioner determines whether the Plaintiff is working. *Id.* If not, the Commissioner determines whether the Plaintiff has an impairment which prevents the performance of basic work activities. *Id.* Second, the Commissioner determines the severity of the Plaintiff's impairment or combination of impairments. *Id.* Third, the Commissioner determines whether the Plaintiff's severe impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations (the "Listing"). *Id.* Fourth, the Commissioner determines whether the Plaintiff's residual functional capacity can meet the physical and mental demands of past work. *Id.* Fifth and finally, the Commissioner determines whether the Plaintiff's residual functional capacity, age, education, and past work experience prevent the performance of any other work. In arriving at a decision, the Commissioner must consider the combined

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decision of the former Fifth Circuit rendered prior to October 1, 1981.

3

effects of all of the alleged impairments, without regard to whether each, if considered separately, would be disabling. *Id.* The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal. *Id.*

## ISSUES

**I.  Whether the ALJ assigned appropriate weight to the treating physician's opinion.**

### Administrative Proceedings

Plaintiff Eva Sims filed her application for supplemental security income on January 31, 2012 alleging that she has been disabled to work since January 10, 2012. Her claims were denied initially on January 4, 2013 and denied on reconsideration on September 20, 2013. She filed a written request for an evidentiary hearing before an administrative law judge (ALJ) on November 11, 2013 and the hearing was conducted on June 17, 2015. Plaintiff testified at the hearing, as well as an impartial vocational expert ("VE"). Tr. 21. The ALJ issued an unfavorable decision denying her claims on July 24, 2015. Tr. 18-37. She next requested review by the Appeals Council on August 26, 2015 but was denied on December 7, 2016. Tr. 16, 1-3. Having exhausted the administrative remedies available to her under the Social Security Act, Plaintiff brings this action seeking judicial review of the final decision by the Commissioner to deny her applications for benefits. Her case is ripe for review.

### Statement of Facts and Evidence

Plaintiff was forty-two years of age when the ALJ rendered his unfavorable decision. She has a limited education, is able to communicate in English, and has past

relevant work as a newspaper carrier. Tr. 22, 33. In conducting the five-step sequential analysis of her claims mandated by the Commissioner's regulations, the ALJ found at step two that she has the severe impairment of diabetes mellitus. Finding No. 2; Tr. 23. He further found that her impairments of asthma, obesity, peripheral neuropathy, hyperlipidemia, gastroesophageal reflux disease (GERD), depression, and anxiety are non-severe and explained his reasoning in detail. Finding No. 2; Tr. 23-26. In his step three analysis he concluded that Plaintiff's impairments, considered alone and in combination with one another, do not meet or medically equal the listed impairments set out in 20 C.F.R. Part 404, Subpart P, Appendix 1. Finding No. 3, Tr. 26. Between steps three and four, the ALJ formulated a residual functional capacity (RFC) assessment which permits Plaintiff to engage in light work with a sit/stand option, with no standing for more than 15 to 20 minutes at a time. Finding No. 4; Tr. 26-32. At step four, he determined that this restricted RFC assessment renders Plaintiff unable to return to her "past relevant work" as a newspaper carrier. At step five, the ALJ relied on VE testimony and found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform such as: sub-assembler, electronics; assembler of molded frames, optical goods; or marker, garment industry. Finding Nos. 5, 8, 9; Tr. 33-35. He therefore found her to be not disabled to work. Finding No. 10; Tr. 35.

## Discussion

Plaintiff contends the ALJ erred in not discussing a treating physician's opinion that Plaintiff is severely limited in her ability to walk. She argues that "an ALJ must state with particularity the weight given to different medical opinions and the reasons for the

assigned weight. Further, a treating physician's opinion must be given substantial weight unless good cause is shown to the contrary." Pl.'s Br. 7; ECF No. 13. The treating physician to whom Plaintiff refers is Dr. Mitchell who completed a Disabled Person's Parking Affidavit for Plaintiff in March 2013, and noted that Plaintiff is severely limited in her ability to walk. However, Plaintiff's argument has no merit, as the ALJ properly assessed Plaintiff's RFC based on testimonial evidence, objective medical findings, and Plaintiff's level of activity. Tr. 25-32.

The ALJ elicited testimony concerning the intensity, symptoms, and treatment of leg pain. Tr. 44-46. Plaintiff testified that she delivered newspapers two days per week, four hours per day, but could not work more due to leg pain, which made it difficult for her to sit or stand. Tr. 44-46, 53-54. Plaintiff claimed that she experienced pain and fatigue when she walked, and she had neuropathy through her legs with slight numbness in her toes. Tr. 53. In January 2012, Plaintiff reportedly performed all activities of daily living without assistance. Tr. 372. In March 2013, Plaintiff reported living in a house with her children and a grandchild, for whom she cared three times a week for three hours each day. Tr. 189-90. Plaintiff could attend to her personal care, drive short distances, and cook. Tr. 49-50. She cleaned and did laundry every day, drove, shopped for groceries, attended church twice a week, and could walk half a mile before needing to stop and sit or return home. Tr. 191-94. She could sit for twenty to thirty minutes and stand about thirty minutes before needing to get up and walk around. Tr. 54-55.

Plaintiff's recorded interactions with medical professionals further support the ALJ's findings. Plaintiff was examined at Walton Regional Medical Center twice in

6

January 2012, and had normal joint range of motion and no musculoskeletal pain, numbness, tingling, motor or sensory deficits, swelling or deformities, cyanosis, clubbing, or edema. Tr. 254, 258, 356. Plaintiff could ambulate independently, demonstrated equal movement and strength for all extremities, and reportedly performed all activities of daily living without assistance. Tr. 372.

Over the next two years, Plaintiff presented to family practice physician Dr. Mitchell and other providers at her office for routine medical care Tr. 284-496, 506-28. In July and August 2012, Plaintiff reported bilateral leg pain, swelling, and numbness or tingling, but noted that pain medication helped relieve her symptoms. Tr. 285, 290, 401. She had an abnormal monofilament test with no sensation in her toes, but normal pulses and reflexes and no clubbing, cyanosis, or edema on exam. Tr. 287, 292, 401. An August 2012 physiological study of the lower extremities was normal. Tr. 382. At Plaintiff's next appointments in November and December 2012, she raised no relevant complaints and exhibited normal and symmetric muscle strength and no edema or tenderness on exam. Tr. 507-08, 519-20, 522-23.

In December 2013, Plaintiff presented to St. Mary's Hospital with complaints of right leg pain after falling. Tr. 539. It was determined she sustained a tibia fracture. Tr. 541. The attending physician applied a splint, prescribed pain medication, and instructed Plaintiff to use crutches and avoid weight bearing. Tr. 541-42. Three days later, Plaintiff reported worsening pain after falling while using her crutches. Tr. 530. On exam, Plaintiff had tenderness with palpation to the right patella, but normal pulses, intact motor and sensory function, and no swelling, ecchymosis, cyanosis, edema, or deep vein

7

thrombosis. Tr. 531. Right ankle imaging showed a tibia fracture, and right knee imaging showed mild joint disease, but no significant joint effusion, fracture, or dislocation. Tr. 536-37. The attending physician prescribed pain medication and instructed Plaintiff to follow up with orthopedics or urgent care, but the record contains no indication Plaintiff ever complied. Tr. 533.

Plaintiff's next medical treatment was not until May 2015, when she first presented to a community health clinic and, at that time, raised no relevant complaint and had a normal physical exam. Tr. 617. From August to October 2015, Plaintiff returned to the clinic four times while reporting problems with her legs. Tr. 604-16. In October, Plaintiff exhibited impaired sensation of the feet and a low-normal Achilles reflex, but otherwise had normal exams. Tr. 605, 608, 610.

The ALJ discussed the dearth of objective evidence supporting Plaintiff's alleged exertional limitations and fully accounted for Plaintiff's isolated and infrequent positive exam findings throughout the relevant period by limiting Plaintiff to a reduced range of light work. Tr. 33. The ALJ considered and ultimately declined to credit Plaintiff's testimony as to the intensity, persistence, and limiting effects of her symptoms. Tr. 32.

The Eleventh Circuit has declined to recognize reversible error where, as here, the ALJ fails to discuss a treating source opinion that is not inconsistent with the RFC finding or the ALJ's ultimate determination. *See Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (declining to recognize reversible error where ALJ did not specify weight he assigned treating source opinions because the ALJ considered the sources' treatment notes and substantial evidence supported the ALJ's ultimate

8

determination); *see also Shaw v. Astrue*, 392 F. App'x 684, 686-87 (11th Cir. 2010) (declining to remand for an ALJ to explicitly weigh opinions that did not contradict the ALJ's decision); *Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008) (same); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (same).

The ALJ did consider the Disabled Person's Parking Affidavit when Plaintiff attested to it at the administrative hearing. Tr. 54. Moreover, the ALJ considered and discussed the records from Dr. Mitchell and other providers at her office, including the findings related to Plaintiff's legs and ability to ambulate. Tr. 27-28. The ALJ fully accounted for any limitations associated with the findings and opinions of Dr. Mitchell or other members of her practice group by limiting Plaintiff to an RFC for a reduced range of light work, that is, light work with a sit-stand option and no standing for more than fifteen to twenty minutes at a time. Tr. 25; *See Hunter*, 609 F. App'x at 558; *see also Shaw*, 392 F. App'x at 686-87; *Caldwell*, 261 F. App'x at 191; *Wright*, 153 F. App'x at 684.

Substantial evidence, including testimonial evidence, objective medical evidence, opinion evidence, and Plaintiff's regular activities, supports the ALJ's RFC finding for light work with a sit-stand option and no standing for more than fifteen to twenty minutes at a time. Tr. 25. Although the ALJ did not explicitly discuss Dr. Mitchell's parking affidavit opinion, any error in this regard was harmless as Dr. Mitchell's opinion is not inconsistent with the RFC finding or the ALJ's ultimate determination.

## CONCLUSION

For the reasons stated above, the determination of the Social Security

Commissioner is affirmed.

SO ORDERED, this 20th day of September, 2017.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE